## DROEGE v. HOAGLAND STATE BANK.

[No. 12,790.   Filed May 27, 1927.]

1.  BILLS AND NOTES.—*Payee's right of action on note not extinguished by renewal note on which signature of surety is forged.* —The good-faith acceptance of a renewal note from the principal, to which renewal the signature of the surety is found to be a forgery, does not operate as a payment of the original note or as an extinguishment of the payee's right of action thereon.   p. 239.

2.  PRINCIPAL AND SURETY.—*Passive negligence of creditor will not discharge a surety.*—The mere passive negligence of the creditor by reason of which the collection of an obligation is

Droege v. Hoagland State Bank—86 Ind. App. 236.

delayed until the principal debtor becomes insolvent will not operate to discharge the surety. p. 239.

3. BILLS AND NOTES.—*Answer pleading negligence of payee of note in not discovering forgery of surety's signature to renewal note and in marking original note "paid" held insufficient on demurrer.*—In an action on a note given in renewal of a former note executed by a principal and surety, a paragraph of answer pleading that the surety's signature to the renewal note was a forgery and that the payee was negligent in failing to detect it and in reporting it to the surety, also in marking the original note "paid" and delivering it to the principal, thus enabling him to deceive the surety and induce the latter to believe it had been paid, whereby he lost all chance of recovery from the principal because of the latter's insolvency, was insufficient on demurrer. p. 239.

From Allen Circuit Court; *Sol A. Wood,* Judge.

Action by the Hoagland State Bank against William Droege as guardian of Henry Droege. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the court in banc.

*William Fruechtenicht* and *Arthur W. Parry,* for appellant.

*Willard Shambaugh* and *W. H. Shambaugh,* for appellee.

REMY, J.—On June 24, 1915, Alfred Droege borrowed $500 of appellee bank, giving his promissory note, due three months after date, the note being executed by himself as principal and his father, Henry Droege, as surety. When the note became due, it was renewed, and there were successive renewals thereof, the last of which was dated December 24, 1919. When this last of the renewal notes became due, Alfred Droege did not pay the same, but, without the knowledge of Henry Droege, delivered to the bank, appellee herein, another note as a renewal, the note being executed by himself as principal, and purporting to have been executed by Henry Droege as surety, but, in fact, the name of Henry Droege had been forged. The bank thereupon marked

the genuine note of December 24, 1919, "paid," by the customary stamp across the face thereof and delivered same to Alfred, who in turn exhibited the note so stamped to Henry Droege, thereby leading him to believe that the obligation to the bank had been discharged. Thereafter, when the note on which the name of Henry Droege had been forged became due, it was renewed in the same manner. There were ten of such renewal notes, the last of which was dated November 5, 1924, due four months after date, to each of which notes the name of Henry Droege had been forged. The genuine notes had all been signed by Henry Droege in the banking house of appellee, while the forged notes had been signed outside of the bank, and, after being signed, had been brought to the bank by Alfred Droege; also the genuine notes had all been signed in ink, and provided for six per cent. interest; the forged notes were signed in pencil and called for interest at seven per cent. Some time after the delivery to the bank of the last of the renewal notes to which the name of Henry Droege had been forged, but before the same became due, the bank and Henry Droege both learned of the forgery. At this time, Alfred was insolvent, was without credit and unable to pay the note; though, at all times prior to and at the time of the execution of the first note on which the name of the surety had been forged, Alfred was solvent and could have been compelled to pay the note. Henry Droege having refused to pay the indebtedness, the bank began this action to enforce collection. Prior to the commencement of the action, William Droege was appointed guardian of Henry Droege, who, because of old age and physical infirmity, had become unable to take care of his business.

Action is upon the note of December 24, 1919, that being the last of the renewal notes which had been executed by Henry Droege as surety. In addition to an

answer in denial, appellant filed a special answer in which he set up in detail the facts above stated, and averred that, because of the negligence of the bank in failing to discover the forgery, and because it had accepted the series of forged notes in renewal, appellant was kept in ignorance of the forgery, and caused to lose all chance of recovery from the principal on the note, and that because of such negligence on the part of the bank, the obligation of Henry Droege as surety had been discharged, and the bank had estopped itself from any right it might otherwise have had against appellant. A demurrer to this answer for want of sufficient facts was sustained. Trial resulted in a finding and judgment for the bank. Action of the court in sustaining demurrer to special answer is assigned as error, and presents the only question for review.

It is well established that the good faith acceptance of a renewal note from the principal, to which renewal the signature of the surety is found to be a 1-3. forgery, does not operate as payment of the original note or as an extinguishment of the payee's right of action thereon. *Allen* v. *Sharpe* (1871), 37 Ind. 67; *Albright* v. *Griffin* (1881), 78 Ind. 182; *West Philadelphia Nat. Bank* v. *Field* (1891), 143 Pa. St. 473, 22 Atl. 1087, 24 Am. St. 562. Appellant concedes that the acceptance by the bank of the renewal notes did not pay the note sued on, but makes the contention that because of the negligence of the bank in failing to detect the forgery and report the same, appellant is now discharged from his obligation as surety. Another principle which is well settled, at least in this jurisdiction, is that mere negligence of the creditor by reason of which the collection of an obligation is delayed until the principal debtor becomes insolvent will not operate to discharge the surety. *Phelbrooks* v. *McEwen* (1868), 29 Ind. 347; *Vance* v. *English* (1881), 78 Ind.

80; *Wasson* v. *Hodshire* (1886), 108 Ind. 26, 8 N. E. 621. In fact, the very question here presented has been decided adversely to appellant's contention by the Supreme Court of this state. *Lovinger* v. *First Nat. Bank, etc.* (1882); 81 Ind. 354. To the same effect, see, *Lyndonville Nat. Bank* v. *Fletcher* (1895), 68 Vt. 81, 34 Atl. 38; *Emerine* v. *O'Brien* (1881), 36 Ohio St. 491; *First Nat. Bank* v. *Buchanan* (1888), 87 Tenn. 32, 9 S. W. 202, 1 L. R. A. 199, 10 Am. St. 617; *Stratoon* v. *McMakin* (1879), 84 Ky. 641, 4 Am. St. 215; *Eagle Bank* v. *Smith* (1823), 5 Conn. 71; *Ritter* v. *Singmaster* (1873), 73 Pa. St. 400. The only difference between the Lovinger case, *supra,* and the case at bar is the number of renewals accepted by the bank. There are no averments in the answer which show fraud or bad faith on the part of the bank. To be sure, the bank marked the last genuine note "paid," but it did not do so with knowledge of the facts; it acted in entire good faith. The most that can be said is that the bank was guilty of "passive negligence," as that term is used by the Supreme Court in cases cited above.

The court did not err in sustaining the demurrer to the special paragraph of answer.

Affirmed.

Dausman, J., absent.